# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEDE HOLADAY,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION**<br><br>Case #4:20-cv-00086-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Dede Holaday's appeal of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income. The Court held oral arguments on June 8, 2021. Having considered the arguments of the parties, having reviewed the record and relevant case law, and having been otherwise fully informed the Court will affirm the administrative ruling.

## I. STANDARD OF REVIEW

This Court's review of an administrative law judge's decision is limited to determining whether her findings are supported by substantial evidence and whether the corrected legal standards were applied. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)); *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quotations and citations omitted). An ALJ is required to consider all of the evidence, although she is not required to discuss all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). If supported by substantial evidence, the Commissioner's

findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Court should evaluate a record as a whole, including the evidence before an ALJ that detracts from the ALJ's decision. *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999). However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

## II. BACKGROUND

A.  PROCEDURAL HISTORY

In September 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning November 4, 2013 (Docket No. 17, Certified Administrative Transcript (Tr.) 69, 82, 166-72, 175-84).[1] The claim was denied initially and upon reconsideration (Tr. 68, 80, 103, 110). Plaintiff then requested a hearing before an ALJ, which was held on October 18, 2019 (Tr. 45-67). The ALJ issued a decision on January 31, 2020, finding Plaintiff was not disabled (Tr. 14-37). The Appeals Council denied Plaintiff's request for review on July 15, 2020 (Tr. 1-3), making the ALJ's decision the final decision for review (Tr. 1-3). 20 C.F.R. § 422.210(a).[2]

On August 13, 2020, Plaintiff filed her Complaint in this case (Docket No. 3). The Commissioner filed his Answer and the administrative record on January 8, 2021 (Docket Nos. 16, 17). On October 9, 2020, both parties consented to a United States Magistrate Judge

---

[1] Under the agency's regulations, even if the ALJ had concluded Plaintiff was disabled, she would not have been entitled to receive benefits retroactive to November 4, 2013. *See* 20 C.F.R. §§ 404.315(a)(4) (no matter how long an individual has been disabled, after a required five-month waiting period beginning no earlier than 17 months before the application is filed, a disabled individual may begin to receive benefits); 416.335 (SSI is not payable before the month following the month in which the application was filed).

[2] Except as otherwise noted, all citations are to the 2020 edition of Part 404 of the C.F.R., which governs DIB claims, and substantially identical provisions in Part 416, which governs SSI

2

conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit (Docket No. 11).

Plaintiff filed her Opening Brief on February 25, 2021 (Docket No. 20). Defendant filed his Answer Brief on March 12, 2021 (Docket No. 22). Plaintiff filed her Reply on March 26, 2021 (Docket No. 23).

B.    SUMMARY OF EVIDENCE BEFORE THE ALJ

Plaintiff has a high school education and took some college courses, with past work that included being a supervisor at Home Depot and doing office work (Tr. 63, 235, 339).

1.    <u>Medical evidence from prior to Plaintiff's alleged onset of disability</u>

Approximately three years prior to Plaintiff's November 2013, alleged disability onset, she injured her elbows and wrists while working at Home Depot (Tr. 323, 369). In June 2012, Plaintiff had surgery for residual left tennis elbow (epicondylitis) (Tr. 327). In approximately January 2013, Plaintiff was injured again at work, which caused a tennis elbow flare up (Tr. 446). Orthopedic surgeon Robert Nakken, M.D., and physician's assistant Steve Newman limited Plaintiff to no lifting over five pounds and no repetitive motion of her hands, wrists, and elbows (Tr. 445-46).

J. Douglas Burrows. M.D., performed an independent medical evaluation in March 2013 (Tr. 323-32; *see also* Tr. 321-22). In consultation with Plaintiff, Dr. Burrows suggested that Plaintiff was limited to occasionally lifting no more than ten pounds; frequently lifting no more than five pounds; and no repetitive grasping, pushing, or pulling (Tr. 330). Dr. Burrows specifically stated that "these restrictions are based on the patient's perceived tolerance" and "a

---

claims, are generally omitted for brevity.

formal functional capacity evaluation could be performed if more objective evidence is needed regarding permanent restrictions" (Tr. 330; *see also* Tr. 331).

    2.    <u>Medical evidence from the relevant time period</u>

In mid-November 2013, shortly after Plaintiff's November 4, 2013 alleged disability onset, Dr. Nakken gave Plaintiff a note to enforce strict compliance with the limitations in Dr. Burrow's evaluation (Tr. 442).

In early 2014, Brett E. Robbins, MSN, APRN, provided mediation management for anxiety, depression, and insomnia (*see, e.g.,* Tr. 579, 583). Plaintiff had normal examination findings, including good insight and intact memory and judgment (*see, e.g.,* Tr. 570, 572, 575, 577-78, 580).

Plaintiff had a right carpal tunnel release at the end of March 2014 and a left carpal tunnel release in August 2014 (Tr. 421-22). Plaintiff obtained good results, except for lingering left wrist and right elbow pain (Tr. 427, 432). In September 2014, Dr. Nakken and Mr. Newman limited Plaintiff to no lifting over 10 pounds; no repetitive lifting of more than five pounds; and no repetitive gripping, grasping, pushing, and pulling (Tr. 431).

In October 2014, nurse Jamie Cox, MSN, APRN, evaluated Plaintiff (Tr. 564). Plaintiff told Ms. Cox she was working at Home Depot as a greeter for an eight-hour shift, which caused pain and arm and hand numbness after two hours (Tr. 565). Plaintiff had full shoulder range of motion; normal wrist and elbow range of motion with some pain on testing; elbow tenderness to palpation; positive signs indicative of carpal tunnel issues; and normal findings in her hands (Tr. 567). Plaintiff was anxious, depressed, sad, and tearful, but her psychiatric examination was otherwise within normal limits (Tr. 567). Ms. Cox stated she did not believe Plaintiff was

disabled or unable to work, but recommended work at home due to stress, which exacerbated Plaintiff's musculoskeletal pain (Tr. 567-68).

In May 2015, Tim Kockler, Ph.D., performed a consultative psychological evaluation (Tr. 458-62). Plaintiff said that she could manage her financial matters independently, including writing budgets and checks, paying bills, and keeping track of income (Tr. 460). Dr. Kockler diagnosed depression with mild anxious distress (Tr. 462). Dr. Kockler noted that Plaintiff could maintain adequate attention and concentration; could complete simple and complex commands; understood all questions; and did not report a significant impairment in daily functioning (Tr. 461). Dr. Kockler also concluded that Plaintiff could manage her financial affairs (Tr. 462).

In June 2015, Joseph W. Nelson, D.O., performed a consultative medical examination (Tr. 464-69). Dr. Nelson concluded Plaintiff was limited in her abilities to perform laborious tasks; lift, carry, and handle heavy weights; and perform tasks that required repetitive motion of both hands (Tr. 468-69). Eleven months later, in May 2016, Dr. Nelson performed another consultative examination and reached the same conclusions, except he added that Plaintiff's tasks should not require grip strength and that she could handle light objects, among other things (Tr. 471-75).

In February 2017, Plaintiff told Broc Parson, D.O., that she experienced worsening of her elbow and wrist pain while lifting boxes at work and that her surgeon had placed her on permanent work restrictions of lifting no more than 15 pounds (Tr. 477). Plaintiff had tenderness to palpation in her elbows, good range motion in her elbows and wrists with pain in all directions, and some subjective decreased sensation in three of her left fingers (Tr. 477). Dr. Parson advised Plaintiff to follow her existing restrictions (Tr. 478).

In August 2017, Neal C. Logan, D.C., a chiropractor who purported to be relying on Dr. Nakken's conclusions, completed a statement of physical limitations (Tr. 480-81). He indicated Plaintiff had no functional limitations but would miss four days of work or more per month and would have reduced efficiency at work (Tr. 480-81).

In January 2018, a state agency medical consultant, Lewis J. Barton, M.D., reviewed the record and concluded Plaintiff did not have any severe physical impairments (Tr. 70-75). State agency psychological consultant, Mark Dilger, M.D., also concluded that month that Plaintiff did not have any severe mental impairments (Tr. 75-76).

In mid-June 2018, Julie Wilcken, PA-C, performed a consultative physical examination (Tr. 609-14). Ms. Wilken concluded, as relevant here, that Plaintiff could lift 10 to 20 pounds but would have trouble manipulating small objects (Tr. 613-14).

Also in mid-June 2018, Steve T. Barney, Ph.D., performed a consultative psychological evaluation (Tr. 617-26). He concluded Plaintiff had an average IQ but had a weakness with mental math and in general knowledge (Tr. 626). Dr. Barney thought Plaintiff could have a learning disorder in mathematics and reading but found her capable of managing funds and making informed decisions (Tr. 61-19, 626). He concluded that Plaintiff's mental conditions did not prevent her from working and thought they would stabilize or improve if her physical ailments were alleviated (Tr. 626).

In late June 2018, a second state agency medical consultant, Kendrick Morrison, M.D., reviewed the record and concluded Plaintiff had no exertional limitations but was limited to frequent bilateral lifting overhead, handling, and fingering (Tr. 83-90, 95). A second state agency psychological consultant, Lynn Johnson, Ph.D., agreed with Dr. Dilger that Plaintiff did not have any severe mental impairments (Tr. 91-93).

In September 2018, Plaintiff told Mehrdad Ferdowsian, D.O., that she had bilateral elbow pain after lifting her grandchildren (Tr. 760). Plaintiff had pain with range of motion in her elbows, forearms, and wrists, but had normal (5/5) strength (Tr. 762). Dr. Ferdowsian prescribed medication and recommended physical activity that included strengthening exercises (Tr. 763).

In early August 2019, Jonathan Sorelle, M.D., removed a ganglion cyst from Plaintiff's right wrist (Tr. 773-75). By the end of the month, Plaintiff was able to sleep through night without numbness or tingling (Tr. 770). Plaintiff's sensation was grossly intact; her incision was well healed; and she had full composite flexion and extension of all fingers and the wrist (Tr. 770). Plaintiff was also able to oppose her thumb and had no triggering or painful digits (Tr. 770).

At the end of September 2019, Dr. Sorelle completed a statement of physical limitations (Tr. 784-85). Dr. Sorelle concluded, among other things, that Plaintiff could lift up to 10 pounds and would be absent from work four days or more per month (Tr. 784-85). He also concluded Plaintiff would be able to return to work with light duty pushing, pulling, carrying, and lifting no more than 10 pounds while attending physical therapy to increase range of motion (Tr. 785). He then indicated "full go" of physical therapy two to three times per week for four weeks, and that he would reevaluate at the next follow up (Tr. 785). There is no additional medical evidence indicating that a follow-up evaluation occurred.

    3.    <u>Administrative hearing testimony</u>

At the October 2019 hearing, Plaintiff testified that she could not work because of her hands but acknowledged that she worked after alleged onset date, including as a night auditor at a hotel and making breakfast (Tr. 54, 61). Plaintiff testified she cooked; did laundry; cleaned her room; painted but had issues if she painted too long; sometimes ate out; traveled to Las Vegas;

7

shopped a little; washed some dishes; watched television; and used the Internet (Tr. 56-57). A vocational expert testified that a hypothetical claimant with limitations that included light work with frequent handling, fingering, and overhead reaching could do Plaintiff's past office clerk position as generally performed in the national economy (Tr. 63-64). The vocational confirmed that the job would remain if Plaintiff was limited to semi-skilled work, and that her testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 64-65). *See* 20 C.F.R. § 404.1566(d)(1) (taking administrative notice of data in the DOT).

C. THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claims (Tr. 14-37). 20 C.F.R. § 404.1520(a)(4). As relevant here, between steps three and four, the ALJ assessed Plaintiff's residual functional capacity and found she was capable of performing the demands of light work (including lifting no more than 10 pounds frequently and 20 pounds occasionally) with frequent (as opposed to constant) handling, fingering, and reaching overhead bilaterally and no concentrated exposure to pulmonary irritants (Tr. 18).[3] Given this residual functional capacity, the ALJ found Plaintiff capable of performing her past light, semi-skilled office clerk work as generally performed in the national economy (Tr. 35-36). Consequently, the ALJ found Plaintiff was not disabled (Tr. 36-37).

III. DISCUSSION

On appeal, Plaintiff contends that the ALJ erred in concluding that she could perform her past office work as generally performed because the ALJ's residual functional capacity

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6.

8

assessment failed to adequately address her upper extremity limitations and mental impairments (ECF No. 20, Plaintiff's Opening Brief (Pl. Br.) 2, 6). Plaintiff additionally argues that the ALJ erred during the residual functional capacity assessment by finding that she could lift more than 10 pounds; frequently handle, finger, and reach overhead bilaterally; or do the math required of her past work (Pl. Br. 6-13). As explained below, the Court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence and, therefore, the ALJ did not err in concluding that Plaintiff could perform her past office work as generally performed.

A. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE, AND THE ALJ DID NOT ERR IN CONCLUDING PLAINTIFF COULD PERFORM HER PAST OFFICE WORK AS GENERALLY PERFORMED

Between steps three and four, an ALJ assesses a claimant's residual functional capacity, which is the most she can do despite her impairments. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1); 404.1546(c). The claimant has the burden to prove her residual functional capacity. *See, e.g., Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003) (comments to final rule). Here, the ALJ assessed Plaintiff's residual functional capacity and found her capable of performing the demands of light work (including lifting no more than 10 pounds frequently and 20 pounds occasionally) with frequent handling, fingering, and reaching overhead bilaterally and no concentrated exposure to pulmonary irritants (Tr. 18). 20 C.F.R. § 404.1567(b). Substantial evidence supports that finding. *Biestek*, 139 S. Ct. at 1154.

1. <u>The ALJ reasonably evaluated the medical opinions and prior administrative medical findings when evaluating Plaintiff's physical residual functional capacity assessment and determining she could perform her past office work.</u>

Plaintiff claims that the ALJ erred in assessing her physical residual functional capacity and garners opinion evidence indicating she was limited to sedentary work and required

additional upper extremity limitations (Pl. Br. 8-11). The ALJ, however, found evidence to the contrary persuasive.

Because Plaintiff applied for benefits on or after March 27, 2017 (Tr. 166, 175), the ALJ applied a new set of regulations for evaluating medical evidence (Tr. 18-35). As relevant here, the revised regulations redefine how evidence is categorized. The regulations specify five-categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. C.F.R. § 404.1513(a). In addition, the ALJ focuses on the persuasiveness of the medical opinions or prior administrative medical findings using the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c). The ALJ must explain how she considers the factors of supportability and consistency and how persuasive she finds any medical opinions or prior administrative medical findings based on these two factors. *Id.*

Here, the ALJ considered the record containing numerous medical opinions and four prior administrative medical findings on Plaintiff's work-related limitations (*see, e.g.,* Tr. 75, 95, 330, 431, 447-48, 468-69, 471-75, 567-68, 613-14, 784-85). The ALJ found greatly persuasive the following:

- Ms. Cox's October 2014 statement that she did not believe Plaintiff was disabled or unable to work, but that she recommended stopping work at Home Depot and pursuing her home occupation (Tr. 23, 567-68);
- Consultative examiner Dr. Nelson's opinions in June 2015 and May 2016 that Plaintiff was limited in her ability to perform tasks of a laborious nature and to lift, carry, and handle heavy weight or perform tasks that required repetitive

10

motion of her hands or grip strength, and that Plaintiff could handle light objects, among other things (Tr. 30, 468-69, 475);

- Ms. Wilken's June 2018 opinion that Plaintiff had no limitations in climbing, stooping, bending, balancing, crawling, kneeling or crouching; could lift 10 to 20 pounds and would have trouble manipulating small objects; might experience exacerbated joint pain with exposure to cold and heat; and must stop every hour when driving due to hand and wrist pain (Tr. Tr. 31, 613-14);

- Consulting psychologist Dr. Kockler's May 2015 opinion that Plaintiff could maintain adequate attention and concentration; could complete simple and complex commands; understood all questions; and was capable of managing her finances despite her mental conditions (Tr. 31, 461-62); and

- The prior administrative medical findings of the state agency psychological consultants, Drs. Dilger and Johnson, that Plaintiff did not have any severe mental limitations (Tr. 33-34, 75-76, 92-93).

*See* 20 C.F.R. § 404.1520c(b)(2).

Drs. Nelson's and Wilken's opinions align with the ALJ's conclusion that Plaintiff could perform light work with frequent handling, fingering, and reaching overhead bilaterally, and Drs. Kockler's, Dilger's and Johnson's conclusions align with the ALJ's finding that Plaintiff did not have any mental work-related limitations (Tr. 18). Thus, the Court finds that this evidence and the other evidence described by the ALJ in the decision constitutes more than the mere scintilla of evidence required to uphold the ALJ's decision. *See Biestek*, 139 S. Ct. at 1154.

Plaintiff argues that the ALJ erred in finding less persuasive the opinions of Drs. Nakken, Sorelle, and Burrows. The Court is unpersuaded. First, with regard to the opinions from her

11

surgeons, Dr. Nakken and Dr. Sorelle, that she could lift only 10 pounds (Pl. Br. 8-9 citing Tr. 431, 783-84), the evidence supports the ALJ's conclusion that these limitations were temporary in nature and thus did not require inclusion in the RFC assessment (Tr. 22, 29 (ALJ finding that Dr. Nakken's opinions aligned with the need for restrictions while undergoing Worker's Compensation-related treatments); Tr. 29 (ALJ finding that Dr. Sorelle's opinion supported a temporary need for additional restrictions after her right wrist cyst excision and that she would not require these restrictions for an extended period of time)).

Plaintiff also argues that the ALJ erred in finding only mildly persuasive Dr. Burrows's "suggestion" in the March 2013 evaluation that Plaintiff was permanently limited to occasional lifting of no more than 10 pounds; frequently lifting no more than five pounds; and could have no repetitive grasping, pushing, or pulling (Pl. Br. 9; Tr. 21, 330). But, the ALJ found Dr. Burrows's conclusions only mildly persuasive because his findings were largely based on Plaintiff's "subjective reports of her perceived limitations" (Tr. 21). This was a reasonable conclusion, particularly because Dr. Burrows specifically stated that "these restrictions are based on the patient's perceived tolerance" and "a formal functional capacity evaluation could be performed if more objective evidence is needed regarding permanent restrictions" (Tr. 21, 330; *see also* Tr. 331). 20 C.F.R. § 404.1520c(c)(i) (ALJ considers an opinion's supportability)*.*

In addition, to the extent that Dr. Burrows concluded Plaintiff was limited to no repetitive grasping, pushing, or pulling, Plaintiff has not shown that the ALJ's limitation to only frequent handling, reaching, or overhead reaching was inconsistent with that conclusion, and she concedes this point (Tr. 18; Pl. Br. 20, citing *Schassar v. Astrue*, No. 08-2546-JWL, 2009 WL 3241597, at *7 (D. Kan. Oct. 5, 2009) (unpublished) (noting, based on *Gallegos v. Barnhart*, 99

12

F. App'x 222, 224-25 (10th Cir. 2004) (unpublished), that a person who is limited to repetitive motion is not necessarily precluded from performing frequent fingering, handling, or reaching)).

In short, the Court finds that the ALJ's evaluation of the medical opinions and prior administrative findings as to Plaintiff's physical restrictions is legally sound and supported by substantial evidence.

2. <u>The ALJ reasonably concluded that Plaintiff did not have mental limitations that would preclude her from performing her past office work.</u>

Plaintiff also contends that the ALJ erred in concluding she did not require mental work-related limitations (Pl. Br. 11). Plaintiff acknowledges that the ALJ provided an extensive evaluation of the medical evidence, but she argues that she underwent frequent mental health medication changes and had symptoms that interfered with working (Pl. Br. 11). This argument does not demonstrate error because the ALJ expressly acknowledged that Plaintiff's medication was modified and her symptoms interfered with working at Home Depot (Tr. 20-28, 35; *see, e.g.*, Tr. 498, 569, 577, 579, 582, 585, 591-92, 722-25, 734-37). In addition, as previously noted, the ALJ found greatly persuasive the conclusions of Drs. Kockler, Dilger, and Johnson, which support the ALJ's finding that Plaintiff did not have mental work-related limitations preventing her from performing her past office work (Tr. 18, 31, 33-34, 75-76, 92-93, 461-62). This, and other evidence in the ALJ's decision, is more than the mere scintilla of evidence required to uphold the ALJ's findings. *Biestek*, 139 S. Ct. at 1154.

Plaintiff also contends that the ALJ did not discuss a visit with Dr. Muhammed Hyder in March 2019, where he diagnosed PTSD, ADD, depression, and anxiety and noted Plaintiff complained of auditory hallucinations and flashbacks (Pl. Br. 11-12; Tr. 711-12). But Plaintiff had the duty to prove her residual functional capacity, and she has not shown that this record demonstrates warranted medically necessary mental limitations. 20 C.F.R. § 404.1545(a)(3);

13

*Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003) (comments to final rule).

In addition, Dr. Hyder's treatment note appears to be an isolated record that was not significantly probative particularly since the ALJ acknowledged that Plaintiff was diagnosed with depression and anxiety (Tr. 20), and no other doctor, before or after March 2019, diagnosed ADD or PTSD or suggested any resulting limitations. *See Clifton*, at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (citation omitted)). The ALJ also cited to the next treatment record from April 2019 and noted that Plaintiff had "another" normal mental status examination, including grossly normal memory and appropriate affect and demeanor (Tr. 27, 734, 736). Plaintiff stated she was depressed but denied any symptoms of anxiety, depression, or sleep disturbance (Tr. 734). This evidence was consistent with the bulk of the treatment records, which indicated that Plaintiff's anxiety and depression were largely controlled with medications to such an extent that she had mostly normal examination findings (*see, e.g.,* Tr. 460, 517, 538-39, 546-57, 561, 563, 734).

Plaintiff also contends the ALJ did not discuss June and July 2019 treatment notes indicating worsening symptoms (Pl. Br. 12; Tr. 722, 726). But the ALJ discussed these records, noting that the June 2019 notes reflected normal mental status examination findings and in July 2019 Plaintiff denied, among other things, anxiety, depression, sleep issues (Tr. 27-28, citing Ex. 23F/9 & 11-14 (contained within Tr. 722-29)).

   3. <u>Plaintiff has not shown that any math-related deficits rendered her unable to perform the work she had successfully performed in the past.</u>

Finally, Plaintiff contends the ALJ erred in concluding she could perform her past work due to its math reasoning level of two in the DOT, and failed explain how she evaluated Plaintiff's potential math learning disorder (Pl. Br. 12-13). The Court is not persuaded for three reasons.

First and foremost, Plaintiff has not presented any evidence demonstrating a decline in her presumably long-standing math learning disorder after she successfully worked at this job (Tr. 625-26). *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005) (at step four, the claimant bears the burden of proving that his impairment prevents him for performing his past relevant work); *Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008) ("The ALJ found that Mr. Cowan 'previously worked with these [longstanding] impairments, which suggests these conditions would not currently prevent work' . . . [and] show[s] that the ALJ affirmatively linked her credibility determination to substantial evidence in the record.").

Second, the ALJ reasonably explained her conclusions regarding Plaintiff's abilities to do math. The ALJ noted, for example, that Dr. Barney identified issues with Plaintiff's ability to do math but found her capable of doing simple math, managing funds, and making informed decisions (Tr. 32, 619, 625-26). Dr. Barney also concluded that Plaintiff's depression and anxiety did not prevent her from working and thought her mental condition would stabilize or improve if her physical ailments were alleviated (Tr. 32, 626). The ALJ also noted Plaintiff told Dr. Kockler that she managed financial matters independently, including budgets, check writing, and paying bills, and Dr. Kockler concluded Plaintiff maintained the mathematical ability to manage her funds (Tr. 19, 31, 460, 462). And, Plaintiff told him she had worked as a cashier (Tr. 31-32, 459, 622; *see also* Tr. 235), which indicates an ability to manage funds.

15

Third, the ALJ specifically asked the vocational expert if a hypothetical claimant with Plaintiff's residual functional capacity could do her past work, and the vocational expert testified that Plaintiff could do her past office clerk position (Tr. 63-64). The vocational expert confirmed that the job would remain if the job was semi-skilled work, and that her testimony was consistent with the DOT (Tr. 64-65). *See* SSR 00-4p, 2000 WL 1898704, at *2 (ALJs are required to inquire whether the vocational expert's testimony is consistent with the DOT). This is substantial evidence supporting the ALJ's decision. *Biestek*, 139 S. Ct. at 1155.

In addition, Plaintiff's counsel had the opportunity to question the vocational expert regarding Plaintiff's specific ability to do math but did not do so (Tr. 64-65). *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 650 (10th Cir. June 2020) (unpublished) (noting that if the claimant's counsel believed the record was inadequate on the location and geographical concentration of occupations identified by the vocational expert, "counsel could have asked additional questions at the hearing to clarify such issues").

In sum, since the ALJ's decision is supported by substantial evidence, it must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV. CONCLUSION

Accordingly, the ALJ's decision is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED: 12 July 2021

PAUL KOHLER
United States Magistrate Judge